UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ABALOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOE LIZARRAGA, et al.,<br><br>　　　　Defendants. | No. 2:20-cv-1699 JAM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff appears pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. This action proceeds on plaintiff's Eighth Amendment claims against defendant Officer C. Parham.[1] Defendant's fully-briefed motion for summary judgment is before the court. In his opposition, plaintiff also seeks appointment of counsel and further discovery. (ECF No. 34 at 5, citing Fed. R. Civ. P. 56(d).) As discussed below, the undersigned recommends that defendant's motion be granted, and denies plaintiff's motion for appointment of counsel and motion for relief under Rule 56(d).

////

////

---

[1] Defendants Lizarraga and J. Scheurer were dismissed at plaintiff's request. (ECF Nos. 8 & 9.)

1

I. <u>Plaintiff's Verified Complaint</u>

Plaintiff alleges that on October 1, 2018, at Mule Creek State Prison ("MCSP"), plaintiff was found unconscious and unresponsive while on the floor. Defendant Officer C. Parham allegedly put plaintiff in handcuffs and leg restraints with such rough mishandling that plaintiff suffered severe damage to his wrists and ankles, torn flesh, mutilation and destruction of his limbs, mangling to the bones. (ECF No. 1 at 3.)

II. <u>Background</u>

Plaintiff filed this action on August 25, 2020. Following a failed early settlement conference, defendant filed an answer on April 20, 2021. On April 28, 2021, the court issued its discovery and scheduling order; the parties were allowed to conduct discovery until September 3, 2021, and all pretrial motions were due on or before November 29, 2021. (ECF No. 26.) In such order, plaintiff was also advised of the requirements for opposing a motion for summary judgment, as set forth in <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998). (ECF No. 26 at 7, 9.)

Plaintiff was deposed on August 25, 2021. (ECF No. 28.) No motions to compel discovery were filed.

Defendant's motion for summary judgment was filed on November 19, 2021; plaintiff failed to file a timely opposition. On December 29, 2021, the undersigned issued plaintiff an order to show cause. On January 18, 2022, plaintiff filed an undated motion for extension of time declaring he had not received the motion. On January 21, 2022, plaintiff filed another motion for extension of time, dated January 15, 2021, in which he stated that COVID-19 breakouts were preventing law library access, and wrote that "the last time [he] got called out was 3-30-21 and [he] was told they would send [him] paperwork, and that [he] needed to find an attorney. Since then he had "not gotten anything," and was "puzzled as to what to do?" (ECF No. 31 at 2.)

On January 26, 2022, defendant was directed to re-serve the motion, and plaintiff was granted an additional sixty days in which to file an opposition. Plaintiff's opposition was filed on February 28, 2022; defendant's reply was filed on March 8, 2022.

////

////

1  III. <u>Legal Standard for Summary Judgment</u>

2  Summary judgment is appropriate when it is demonstrated that the standard set forth in
3  Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the
4  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to
5  judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged." <u>Id.</u>

3

establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could

////

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice filed November 19, 2019 (ECF No. 27-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV.  Undisputed Facts[3] ("UDF")

1. Plaintiff is a state prisoner in the custody of the California Department of Corrections ("CDCR").

2. Plaintiff has been housed at Mule Creek State Prison ("MCSP") from about 2015 to the present.  (Pl.'s Dep. at 13.)

3. During all times relevant herein, defendant C. Parham was a Correctional Officer at MCSP.

4. On October 1, 2018, plaintiff suffered a drug overdose and went man down in his cell.

5. In response to a medical alarm, defendant discovered plaintiff unresponsive on the floor of his cell.

6. At the direction of medical staff, defendant and two other officers pulled plaintiff out of his cell for emergency medical attention.

7. Defendant transported plaintiff to the Treatment and Triage Area ("TTA") in an emergency response vehicle ("ERV").

8. While transported to the TTA, plaintiff remained unresponsive in the ERV.

9. At the TTA, paramedics cut off plaintiff's shirt to check for injuries.

10. Defendant discovered a small blue package tucked in plaintiff's belly button.

11. Paramedics administered Narcan and plaintiff, on a gurney, began thrashing his arms and legs around.

12. Despite thrashing his arms and legs around, plaintiff remained unresponsive.

---

[3] For purposes of summary judgment, the undersigned finds these facts are undisputed.

13. To maintain plaintiff's safety and the safety of the paramedics for transport to an outside hospital, defendant secured each of plaintiff's limbs by handcuffing them to the gurney handrails in accordance with defendant's training.

14. When applying the handcuffs, defendant did not pinch plaintiff's skin or overtighten them; defendant applied the handcuffs just tight enough so that plaintiff could not slip his hands and feet through the cuffs or injure the paramedics providing plaintiff with life-saving medical care.

15. Defendant did not accompany the paramedics during the transport to the outside hospital.

16. Plaintiff sustained lacerations to his wrists and ankles on October 1, 2018.

V. The Parties' Evidence

Defendant's Evidence

Defendant provided the following evidence.

1. Declaration of defendant Correctional Officer Parham, who declares as follows. On October 1, 2018, he was assigned to Facility A at MCSP, and while conducting his duties as a Security Patrol Officer, he responded to a medical emergency alarm in Building I where plaintiff was housed. Parham found plaintiff "unresponsive on the floor of his cell." As directed by the medical staff in the housing unit:

- Parham and two other officers pulled plaintiff out of his cell for a transport to the TTA for emergency medical care.
- Parham transported plaintiff by an emergency response vehicle ERV to the TTA.

(ECF No. 27-4 at 2.) During the short transport plaintiff remained unresponsive. About five minutes after arriving at the TTA, paramedics from outside the prison arrived to evaluate plaintiff and they cut away plaintiff's shirt. When the paramedics cut away plaintiff's shirt, defendant Parham discovered a small blue package tucked in plaintiff's navel, which defendant Parham suspected to be an illegal substance. After the paramedics administered Narcan, plaintiff began to thrash his arms and legs around on the gurney, but otherwise remained unresponsive. To maintain plaintiff's safety and the safety of the paramedics trying to prepare plaintiff for transport

to an outside hospital, defendant Parham had to secure each of plaintiff's arms and legs to the handrails of the gurney with handcuffs in accordance with Parham's training. Parham declares that in applying the handcuffs, he did not pinch plaintiff's skin or overtighten them; he applied them just tight enough so that plaintiff would be unable to slip his hands and feet through the cuffs or injure the paramedics providing him with life-saving medical care. (ECF No. 27-4 at 2.)

Finally, defendant Parham declares that he did not cause any injuries to plaintiff "when applying the handcuffs," and that once plaintiff was under the paramedics' care, defendant Parham "had no further interaction with [plaintiff]" and "did not ride in the ambulance to the outside hospital." (ECF No. 27-4 at 3.)

2. An October 1, 2018 incident report, No. MCSP-A01-18-10-0473, cited plaintiff for possession of a controlled substance, Heroin. (ECF No. 27-4 at 5-11.)

3. A CDCR 7219 form, dated October 1, 2018, in which RN S. Oehler, assigned to the TTA, charted that no injuries were found on plaintiff, who was unresponsive. Oehler first saw plaintiff at 1605 (4:05 p.m.) and noted disposition time as 1626 (4:26 p.m.). (ECF No. 27-4 at 12.)

4. Another CDCR 7219 form dated October 1, 2018, in which RN S. Oehler documented that at 1615 (4:15 p.m.), staff person Samuel Cornell ripped his glove during emergent patient care, and inmate's blood pooled on Cornell's thumb nail where Cornell had an open wound in his cuticle. (ECF No. 27-4 at 13.) RN Oehler saw Cornell at 1626 (4:26 p.m.). (Id.) The form does not identify the inmate or indicate where the inmate's blood came from.

5. Various documents related to possession of a controlled substance, including a MCSP Incident Package Processing Cover Sheet. (ECF No. 27-4 at 14-21.)

6. Plaintiff's deposition testimony.

Plaintiff's Evidence

Aside from his verified complaint,[4] plaintiff provided the following evidence:

////

---

[4] The court considers as evidence those portions of the complaint that are based on plaintiff's personal knowledge. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

      1. Photographs of injuries to his wrists and ankles, taken on various dates in October of 2018. (ECF No. 34 at 7-16 (Pl.'s Exhibit A).)

      2. Medical record showing plaintiff was intubated for likely drug overdose, and "Bilateral wrist laceration. Sutured in the ER. Wound care." (ECF No. 34 at 17.)

      3. Medical records stating plaintiff arrived at the emergency department on October 1, 2018, at 16:55 (4:55 p.m.), and was admitted to the ICU on October 2, 2018; plaintiff "is at high risk of death due to encephalopathy, overdose and metabolic acidosis," and contained the following procedure orders: (1) Laceration Complex Repair ordered by Dr. Beffa on October 2, 2018; (2) Laceration Simple Repair ordered by Dr. Beffa on October 1, 2018. (ECF No. 34 at 18.)

      4. Emergency Department Physician Note by Dr. Beffa, stating:

> CHIEF COMPLAINT: Altered mental status; Drug Overdose (MCSP) Pt found down in cell with balloon of substance in belly button. Pt was given Narcan by Staff, PT became combative. Pt arrived fighting staff, PT had wounds on wrists from fighting); and Laceration (bilateral wrists).
>
> HISTORY OF PRESENT ILLNESS: ¶ HPI 50-year-old male who arrives via ambulance from MCSP who was found down unresponsive in his cell after possible drug overdose. Awakened extremely agitated and altered after Narcan on scene by ems. Patient was given 2 Versed IM and came to, he became very agitated before departure. Patient appears diaphoretic and bloody. Correctional officers note the blood is due to patient pulling on his cuffs and causing lacerations. Stable vitals per emergency personnel. There was an unknown balloon found in patient's navel, possibly containing drugs which were confiscated as evidence by prison officials. Patient is agitated and aggressive upon arrival requiring 6 people to restrain him. He additionally sustained Bilateral wrist lacerations during his struggle while in hand cuffs.
>
> Prehospital treatment: I instructed emergency personnel to give 2 Versed IM x 2. A total 4 Versed IM was given prior to arrival under my direction as patient too agitated for EMS to care for.

(ECF No. 34 at 18-19.) On physical exam, Dr. Beffa noted plaintiff "appears distressed. Agitated and combative." (ECF No. 34 at 20.)

      5. Progress Note from October 2, 2018, by hospitalist Dr. Amir Akhzari, who wrote plaintiff reported "pain all over, more on his hands where he has sutures." (ECF No. 34 at 21.)

////

6. Undated progress note from MCSP, physical exam by unidentified health professional noted plaintiff's bilateral wrist laceration repair with stitches, wound healing well with appropriate approximation, no erythema, edema, discharge or other evidence of infection. (ECF No. 34 at 22.)

7. MCSP Progress Note dated November 12, 2018, from LVN Jessica Gonsalves who noted plaintiff came to the clinic for wound care for his right ankle. Gonsalves cleaned the wound, applied medihoney with adhesive foam dressing, and tegaderm on top to keep the dressing from getting wet. Gonsalves noted there was no sign of infection, no redness, no odor, and no pain during dressing change. (ECF No. 34 at 23.)

8. MCSP Progress Note dated November 21, 2018; LVN Pelayo's described applying the same dressing change used by LVN Gonsalves; although there was a small amount of yellow discharge on plaintiff's old bandage, Pelayo noted there were no signs or symptoms of infection. (ECF No. 34 at 24.)

9. Plaintiff sustained lacerations to his wrists and ankles on October 1, 2018. (ECF No. 34.)[5]

VI. Legal Standards

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1 (1992). Determining whether there has been an Eighth Amendment violation turns upon "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

To determine whether the use of force violates the Eighth Amendment, the court should consider the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7

---

[5] Plaintiff's opposition, signed under penalty of perjury, is considered evidence, but only as to those matters based on plaintiff's own personal knowledge or perception. Fed. R. Evid. 602, 701; see also Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir.1998) (verified motions admissible to oppose summary judgment).

(quoting Whitley, 475 U.S. at 321); see also LeMaire v. Maass, 12 F.3d 1444, 1454 (9th Cir. 1993) (considering need for application of measure or sanction complained of, relationship between need and measure or sanction used, extent of any injury inflicted and extent of surrounding threat to safety of staff and inmates); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

VII. Discussion

    A. No Competent Evidence

The undersigned agrees with plaintiff that his injuries were not de minimis. Certainly they are not the typical injuries the undersigned has seen in cases where handcuffs were applied too tightly and caused abrasions. Here, plaintiff sustained lacerations, and at least one wrist laceration required stitches. However, the photographs of plaintiff's injuries, standing alone, do not demonstrate that such injuries were caused by defendant's acts or omissions, or that defendant used excessive force during the events of October 1, 2018. Therefore, contrary to plaintiff's argument (ECF No. 34 at 4), the photographs alone do not demonstrate a genuine material dispute of fact precluding summary judgment. Rather, it is undisputed plaintiff suffered such injuries at some point on October 1, 2018. What remains disputed is how and when such injuries occurred.

As argued by defendant, plaintiff adduced no competent evidence that defendant Parham used excessive force during the October 1, 2018 incident. Rather, it is undisputed that defendant Parham handcuffed plaintiff's arms and legs to the gurney railing in response to a medical emergency. It is undisputed that there was a need for the application of handcuffs given that plaintiff was combative and thrashing about. Even Dr. Beffa noted in plaintiff's medical record that treatment could not be administered due to plaintiff's agitated state. Plaintiff adduced no evidence that excessive force was used in applying the handcuffs; rather, he argues they were improperly applied. But plaintiff provided no competent evidence that defendant Parham improperly applied the handcuffs or acted maliciously and sadistically to cause harm when he applied the handcuffs, or that defendant Parham used excessive force in any other way during the events of October 1, 2018. The record evidence demonstrates that handcuffing plaintiff to the gurney railing at the TTA was an appropriate use of force to allow paramedics to treat plaintiff for

his life-threatening medical condition.

Importantly, plaintiff concedes he was unconscious at the time he sustained the alleged injuries. In his verified complaint, he claims that while plaintiff was "unaware of his surroundings," defendant Parham "roughly mishandled" plaintiff while placing him in handcuffs and leg restraints. (ECF No. 1 at 3.) In his August 25, 2021 deposition, plaintiff testified that he was unconscious from the time he was removed from his cell all the way through his transport to the hospital, and that he has no idea how or when he sustained the injuries to his wrists and ankles. (Pl.'s Dep. 28:4-8; 42:1-13.)

Plaintiff also testified that there was an unidentified inmate witness in the holding cell who told plaintiff that once the officers found the putative drug on plaintiff's stomach,

> they started pulling on [plaintiff's] chains and checking to see if [plaintiff] had other things on [him], but the way they were pulling on [his] chains and then turning [plaintiff] over was real rough, right, and the nurse told the officers why you doing that to him, you know. Just check him. You can do it without pulling on him. You're cutting him.

(Pl.'s Dep. at 40-41.)

Now, in his verified opposition, plaintiff claims for the first time that he:

> [w]ill be able to prove at trial that Parham caused the injuries seen in Ex. A where after Parham placed handcuffs on plaintiff's unconscious body (wrists) he then both yanked up and down, then stomped, on the unlocked cuffs, cutting through plaintiff's skin and tissue.

(ECF No. 34 at 2.) Plaintiff declares he will produce the LVN who responded to plaintiff's overdose, someone he "believes" is named Michelle Thomas, who told plaintiff she was so shocked at the time Parham committed his assault and battery that she froze.[6] (Id.) Plaintiff also claims that unidentified inmate witnesses heard this nurse yell at Parham, "that's not necessary officer, he's not even conscious." (Id.) Finally, plaintiff contends that at trial he will prove that "it was not accidental. Parham was overheard and seen actually 'stepping on' plaintiff's cuffs after the nurse tried to get him to stop his 'yanking up and down' of plaintiff's hands and feet," by

---

[6] Unlike other statements plaintiff attributes to putative witnesses, plaintiff did not put this alleged statement in quotations.

11

presenting testimony from unidentified inmate witnesses. (ECF No. 34 at 3.)

Unfortunately, plaintiff provides no declarations from any witness to the events of October 1, 2018. Plaintiff's declaration as to the testimony of LVN Michelle Thomas or other unidentified witnesses is inadmissible hearsay. While plaintiff reiterates what some of these witnesses have allegedly told him, plaintiff's statements are hearsay and cannot be used to refute defendant Parham's testimony. Absent the declaration of each witness, the court is unable to determine whether there is a material dispute of fact as to whether defendant Parham used excessive force or caused plaintiff's injuries. And, because plaintiff concedes he was unconscious during the incident at issue, he cannot personally testify as to who injured him or how he sustained such injuries.

In addition, plaintiff fails to address or rebut defendant's testimony that plaintiff began "thrashing around" after paramedics administered Narcan. Indeed, that plaintiff was "combative," "extremely agitated," "agitating and struggling" and "agitated and aggressive upon arrival requiring 6 people to restrain him" is supported by medical records provided by plaintiff. While plaintiff adduced no competent evidence that defendant caused plaintiff's injuries, plaintiff also fails to rebut the fair inference that such injuries may have resulted from his thrashing and struggling while in handcuffs and under the influence of the drug overdose, either at the MCSP TTA, or during plaintiff's transport to the hospital.

B. <u>No Evidence Rebutting Defendant's Declaration re Training</u>

Defendant Parham, a trained correctional officer, declares that he secured plaintiff's arms and legs to the handrails of the gurney with handcuffs in accordance with Parham's training. In his opposition, plaintiff claims, "to his knowledge and belief," that defendant Parham failed to properly apply the handcuffs. (ECF No. 34 at 2.) But plaintiff provides no competent evidence as to correctional officer training for the proper application of handcuffs during a medical emergency. Plaintiff does not demonstrate he has personal knowledge of such correctional officer training. Thus, plaintiff failed to rebut defendant Parham's testimony with competent evidence demonstrating what such training entails, or that defendant's application of handcuffs did not comport with such training. Rather, plaintiff appears to speculate that his injuries were

caused by Parham's failure to "secure and double lock" the handcuffs, but offers no competent evidence to support such theory. Absent such evidence, defendant Parham's testimony demonstrates he properly applied the handcuffs.

Accordingly, because plaintiff fails to demonstrate, by competent evidence, that there remains a triable issue of material fact as to whether defendant Parham used excessive force, improperly applied the handcuffs, or caused the injuries to plaintiff's wrists and ankles, defendant is entitled to summary judgment.

### C. Qualified Immunity

In light of these findings, the undersigned declines to address the issue of qualified immunity.

## VIII. Plaintiff's Rule 56(d) Motion

In his opposition, plaintiff declares:

> that the witnesses mentioned herein will sign declarations/affidavits, but that current covid restriction and lack of movement, including access to the person who has helped plaintiff thus far, is not possible at this time. If the court is unwilling to accept this as fact, plaintiff would then request postponement and extension of time to file these sworn declarations.

(ECF No. 34 at 4.) Plaintiff contends that his "proof of injury," "need for further evidence," and "need for further discovery that plaintiff cannot propound" warrants appointment of counsel. (ECF No. 34 at 4, 5.) Defendant objects that plaintiff's "self-serving contentions about potential witness testimony are unlikely to exist because they are inconsistent" with plaintiff's prior version of the October 1, 2018 events because his versions have evolved over time. (ECF No. 35 at 4), (comparing plaintiff's verified complaint, deposition testimony, and verified opposition.) In addition, defendant argues that plaintiff failed to explain why he did not seek additional time to conduct discovery before the September 3, 2021, discovery deadline.

Federal Rule of Civil Procedure 56(d) allows the court to deny or continue a motion for summary judgment if the defending party establishes that it is unable to properly defend against the motion. Fed. R. Civ. P. 56(d). "Rule 56(d) provides a 'device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" Stevens v.

13

Corelogic, Inc., 899 F.3d 666, 678 (9th Cir. 2018) (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002)).

"In particular, '[t]he requesting party must show [that]: (1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.'" Stevens, 899 F.3d at 678 (quoting Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008)) (alteration and emphasis in original); Tatum v. City and County of Sacramento, 441 F.3d 1090, 1100 (9th Cir. 2006).

"Though the conduct of discovery is generally left to a district court's discretion, summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs." Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). Thus, summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004). Plaintiff, as the party opposing summary judgment, bears the burden "to show what material facts would be discovered that would preclude summary judgment." Klingele, 849 F.2d at 412; see also Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.").

Moreover, "'[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.'" Conkle, 73 F.3d at 914 (quoting Cal. Union Ins. Co. v. Amer. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990)).

Has Plaintiff Identified Specific Facts?

Here, plaintiff failed to demonstrate that further discovery would uncover specific facts that exist and that such facts would preclude summary judgment. Indeed, plaintiff fails to identify any inmate witness by name, and fails to identify a potential inmate witness who personally observed defendant Parham use excessive force on October 1, 2018. Plaintiff's cellmate or inmates in neighboring cells could not testify as to what transpired at the TTA. Plaintiff claims

that unidentified inmate witnesses overheard the LVN say "that's not necessary officer, he's not even conscious" (ECF No. 34 at 2), but plaintiff fails to explain where such inmates were in relation to where plaintiff was being treated in the TTA, or how such testimony would preclude summary judgment.

In his deposition, plaintiff claimed he spoke with one inmate witness about a week before the inmate was released and plaintiff got back (Pl.'s Dep. at 35); such inmate was in a holding cell and would testify that after the drugs were found on plaintiff's stomach:

> they started pulling on [plaintiff's] chains and checking to see if [plaintiff] had other things on [him], but the way they were pulling on [the] chains and then turning [plaintiff] over was real rough, right, and the nurse told the officers why you doing that to him, you know. Just check him. You can do it without pulling on him. You're cutting him.

(Pl.'s Dep. at 40-41.) But despite plaintiff's testimony that such witness had been released and contacted plaintiff's family "saying that if they needed [him] to come to court . . . he was with me," and plaintiff had the inmate witness' name "written down in the house" (Pl.'s Dep. at 35), plaintiff did not provide such witness' name, or explain why he was unable to earlier obtain such witness' declaration. In addition, plaintiff failed to explain how the witness' putative testimony would preclude summary judgment. Even assuming that "they" were checking to see if plaintiff had other "things" on him does not demonstrate that their actions were taken maliciously and sadistically for the very purpose of causing harm.

As to the potential witness, an LVN plaintiff "believes" is named Michelle Thomas, who allegedly told plaintiff she was so shocked at the time she froze, plaintiff fails to demonstrate how her testimony, if proffered, would preclude summary judgment.

Finally, as argued by defendant, the evolving manner in which plaintiff described the putative testimony raises a question as to whether such evidence exists.

Based on the above, plaintiff failed to meet his burden to show that additional discovery would uncover specific facts or evidence which would preclude summary judgment. Tatum, 441 F.3d at 1100.

////

### Has Plaintiff Demonstrated Diligence?

Most importantly, plaintiff fails to demonstrate any diligence in obtaining discovery in this action. Although plaintiff knew one inmate witness was being released from prison, plaintiff did not obtain a declaration before the inmate's release or secure his name and contact information. Plaintiff has been housed at MCSP for the duration of this litigation, yet fails to set forth any efforts he took to locate other inmate witnesses. (ECF No. 34, *passim*.) Indeed, in his August 26, 2021 deposition, taken shortly before the discovery deadline passed, he confirmed he did not know their names, and could only get their names by getting reports of everyone who had appointments at the CTC and who were in the tank. (Pl.'s Dep. at 38.) This statement demonstrates plaintiff knew how to obtain the names, but in his opposition, plaintiff described no efforts to do so. Plaintiff also failed to show he sought the identity of staff involved in the October 1, 2018 incident.

As argued by defendant, plaintiff did not file any motion to compel discovery, and did not file any request to extend the time for discovery.

Plaintiff's reliance on "the current covid restriction and lack of movement" fails to explain his lack of diligence prior to the September 3, 2021 discovery deadline.

On this record, the undersigned cannot find that plaintiff diligently prosecuted this action, and therefore should not be granted a continuance. Conkle, 73 F.3d at 914; see Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (lack of diligence precluded finding district court abused discretion in denying further discovery).

### IX. Appointment of Counsel

Plaintiff requests that the court appoint counsel. However, in light of the above, the undersigned finds that the appointment of counsel is not appropriate.

### X. Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for appointment of counsel (ECF No. 34) is denied; and

////

////

IT IS RECOMMENDED that:

1. Plaintiff's motion for relief under Fed. R. Civ. P. 56(d) (ECF No. 34) be denied; and

2. Defendant Parham's motion for summary judgment (ECF No. 27) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 3, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/abal1699.msj